UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JESSE ARON ROSS, | Case No. 2:22-cv-00259-CDS-VCF |
| Plaintiff, | SCREENING ORDER |
| v. | |
| CALVIN JOHNSON, et al., | |
| Defendants. | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. ECF Nos. 1, 1-1. The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation

1

of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

In the complaint, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). ECF No. 1-1 at 1. Plaintiff sues Defendants Calvin Johnson, Julie Williams, and Steve Sisolak. *Id.* at 1-2. Plaintiff brings one count and seeks monetary, declaratory, and injunctive relief. *Id.* at 3-10.

The complaint alleges the following: Plaintiff is incarcerated at HDSP. *Id.* at 3. On March 18, 2020, HDSP implemented modified program operations ("MPO") in response to the COVID-19 pandemic. *Id.* MPO may consist of 20, 22, or 24 hours of cell confinement for days, weeks, or months. *Id.* HDSP administrators did not create written policies to govern MPO. *Id.* at 3-4.

MPO eliminated access to outdoor exercise for up to 6 months straight at one point. *Id.* at 4. MPO also limited outdoor exercise at other times to one to two hours per week. *Id.* From March 18, 2020, to January 1, 2021, Plaintiff received a total of less than 20 hours of outdoor exercise. *Id.*

On January 7, 2022, Warden Calvin Johnson placed HDSP on 24/7 lockdown with two to three 30-minute shower/phone breaks per week. *Id.* at 5. The lockdown persisted until February 9, 2022. *Id.* From January 7, 2022, until the "present date," February 6, 2022,[1] all outdoor exercise was cancelled. *Id.*

Outdoor exercise was purportedly cancelled due to the COVID-19 pandemic. *Id.* However, HDSP staff are not required to comply with personal protective equipment requirements because it is easier to just lockdown the inmate population. *Id.* Additionally,

---

[1]    The Court notes that complaint states that the "present date" is February 6, 2022. ECF No. 1-1 at 5. However, the complaint is dated February 9, 2022, and the previous sentence refers to the lockdown persisting through February 9, 2022.

inmates who work in prison industries have been required to continue working while inmates and staff workers were infected with COVID-19. *Id.* Inmates who work in the canteen have also been required to continue working, because the canteen generates $300,000 a month in revenue. *Id.* at 6.

As a result of the lack of outdoor exercise, Plaintiff has gained 80 pounds, and he has experienced significant muscle atrophy. *Id.* at 5. Plaintiff's pre-existing anxiety and depression have also been exacerbated. *Id.* Plaintiff currently receives four hours of out of cell time, but he does not receive any outdoor exercise. *Id.* at 6.

Plaintiff filed informal, first-level, and second-level grievances about the lack of outdoor exercise. *Id.* Plaintiff did not receive a response to his informal or second-level grievances. *Id.* Defendant Calvin Johnson denied Plaintiff's first-level grievance. *Id.* Defendants Johnson and Williams are policy makers who jointly determine the availability of outdoor exercise. *Id.* at 7. Williams and Johnson created the policies that led to the elimination or restriction of outdoor exercise. *Id.*

Steve Sisolak, the president of the Nevada Board of Prison Commissioners, was notified about the lack of outdoor exercise at HDSP. *Id.* During meetings of the Nevada Board of Prison Commissioners, Sisolak plays on his phone instead of participating in the meetings. *Id.* The Nevada Board of Prison Commissioners is responsible for approving regulations that provide for outdoor exercise for inmates. *Id.* at 8.

Based on these allegations, Plaintiff brings a conditions of confinement claim under the Eighth Amendment. *Id.* at 3. The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

The Ninth Circuit has recognized that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Id.* at 1207. As such, "a

1 plaintiff may state a claim against a supervisor for deliberate indifference based upon the

2 supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her

3 subordinates." *Id*. Supervisory liability exists even without overt personal participation in the

4 offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a

5 repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

6 *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

7    The Court finds that Plaintiff states a colorable conditions of confinement claim. The

8 Court liberally construes the complaint as alleging that in response to the COVID-19 pandemic,

9 Defendants Johnson and Williams instituted modified program operations that severely

10 restricted Plaintiff's outdoor exercise. As a result of the new policies, Plaintiff went without

11 outdoor exercise for six months at one point, and he had a total of 20 hours of outdoor exercise

12 from March 18, 2020, to January 1, 2021. Even when Plaintiff received outdoor exercise, the

13 amount of exercise was severely restricted. As a result of the lack of outdoor exercise, Plaintiff

14 gained 80 pounds and experience significant muscle atrophy.  Plaintiff's mental health also

15 deteriorated.

16    Defendant Sisolak is the president of the Nevada Board of Prison Commissioners. In this

17 role, Sisolak had the authority and responsibility to ensure that inmates receive adequate

18 outdoor exercise. Sisolak was informed that inmates at HDSP were not receiving outdoor

19 exercise. Although Sisolak had the authority to ensure that HDSP began providing inmates

20 outdoor exercise, he did not do anything to address the ongoing lack of outdoor exercise.

21    Based on these allegations, Plaintiff went without outdoor exercise for an extended

22 period of time and suffered significant physical and mental deterioration. Williams and Johnson

23 were responsible for instituting the limitation on outdoor exercise. Sisolak, who had the

24 authority to require that inmates receive outdoor exercise, knew about the lack of outdoor

25 exercise and failed to take any action to correct the issue. These allegations are sufficient to state

26 a colorable claim at this preliminary screening stage. This claim will proceed against Defendants

27 Johnson, Williams, and Sisolak.

28

### III.      CONCLUSION

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

It is further ordered that Plaintiff's conditions of confinement claim will proceed against Defendants Johnson, Williams, and Sisolak.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is **STAYED** for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. **During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers will be filed in this case**, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma*

*pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Clerk of the Court will electronically **SERVE** a copy of this order and a copy of Plaintiff's complaint (ECF No. 1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office will advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement.  No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED this 23rd day of June 2022.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JESSE ARON ROSS, | | Case No. 2:22-cv-00259-CDS-VCF |
| | Plaintiff, | REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |
| v. | | |
| CALVIN JOHNSON, | | |
| | Defendant. | |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///

///

///

///

///

///

///

///

///

///

9

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

<u>Situation One: Mediated Case</u>: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check <u>**ONE**</u> of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____    None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

<u>Situation Two: Informal Settlement Discussions Case</u>: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check <u>**ONE**</u> of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____    The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____    The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____    The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____    None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____            _____
                              Print                                                    Signature

Address:        _____        Phone:        _____

                _____                      Email:

                                                         _____