UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Jesse Aron Ross,

          Plaintiff

v.

Calvin Johnson, *et al.*,

          Defendants

Case No. 2:22-cv-00259-CDS-VCF

**Order Granting Plaintiff's Motion for a Preliminary Injunction and Ruling on Three of Plaintiff's Other Motions**

[ECF Nos. 11, 32, 37, 38]

      Incarcerated pro se plaintiff Jesse Aron Ross brings this § 1983 action in response to High Desert State Prison's (HDSP) inadequate provision of access to outdoor exercise for Ross. He moves for a preliminary injunction, seeking an order requiring HDSP to provide him with adequate outdoor exercise time.[1] I held an evidentiary hearing on the injunction motion on February 2, 2023, during which defendant Julie Williams, the associate warden of HDSP, pointed to staffing issues as the reason behind Ross's lack of outdoor time. Based on the evidence presented at that hearing and the parties' arguments, I find that Ross has met his burden and therefore grant his motion for a preliminary injunction. Separately, Ross has filed three other pending motions, in which he moves to (1) compel witness attendance at the February 2nd hearing, (2) admit evidence in support of his injunction motion, and (3) obtain transcripts from the evidentiary hearing. I deny his motions to compel witness attendance and to admit extrinsic evidence, as the hearing as already concluded, but I grant his request to obtain a hearing transcript.

---

[1] Ross sues various defendants, including the former Governor of Nevada, Steve Sisolak. Joseph Lombardo became the Governor of Nevada on January 2, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Joseph Lombardo will be substituted as the defendant in this suit. Fed. R. Civ. P. 25(d). I make no ruling at this point on whether Ross has stated viable claims for relief against Governor Lombardo. All future filings in this case should acknowledge this substitution.

I.  Motion for preliminary injunction [ECF No. 11]

   *a. Relevant background information*

Ross has been incarcerated at HDSP in the Protective Segregation Unit, Unit #9, as a post-conviction detainee. Compl., ECF No. 4 at 3; Mot., ECF No. 11 at 5. Because of a settlement agreement in prior litigation challenging the conditions of his confinement, Ross cannot be transferred from HDSP until the completion of his post-conviction proceedings. ECF No. 11 at 5. He alleges that HDSP implemented a "Modified Program [of] Operations," or "MPO," in response to the COVID-19 pandemic. ECF No. 4 at 3. That policy allegedly forces inmates into 20–24-hour periods of in-cell confinement for undefined lengths of time (sometimes weeks or months), but Ross alleges that—except for yard schedules—such policy is not written down. *Id.* at 3–4. He notes that the MPO completely eliminated access to outdoor exercise for up to six months straight, at times, and at other times restricted outdoor exercise to 1–2 hours per week. *Id.* at 4. And he contends that correctional officers routinely delayed or canceled out-of-cell activities. ECF No. 11 at 6.

Ross filed exhibits in support of his motion, including HDSP's model schedule for inmate yard time by unit—Tier Activity Schedule (Ex. B, ECF No. 12)[2]—and his handwritten log tracking actual inmate yard time for Unit #9 between January 2022 and October 2022 (Ex. C, ECF No. 12). The prison's yard schedule—in effect prior to the hearing—purported that Unit #9 received seven hours of yard time per week (one hour per day) and six hours of gym time per week. ECF No. 12 at 16–17. However, Ross's own log indicates that neither yard nor gym time were permitted for long continuous periods, including stretches of multiple weeks in July, September, and October of 2022. ECF No. 11 at 6–7, ECF No. 12 at 25–28. On the date that Ross

---

[2] At the evidentiary hearing, the HDSP defendants represented that a new yard schedule had gone into effect that day. ECF No. 35. But I found this new schedule unavailing, as it was essentially a subsequent remedial measure that the defendants implemented far too late. Further, the mere existence of a new or improved schedule does not guarantee that inmates' access to the outdoors will, in fact, comport with said schedule, as evidenced by testimony given at the hearing. Thus, I decline to consider HDSP's new schedule as a sufficient solution to Ross's underlying harm.

sought injunctive relief, October 26, 2022, he had not received yard time since August 30, 2022—nearly 60 days. ECF No. 11 at 8. Ross also attempted to introduce further calendars at the evidentiary hearing spanning the time period for which his motion was under consideration. *See* Ex. F, ECF No. 37. I found that, while those calendars could not be admitted as evidence in this case, they were nonetheless worthy of consideration at this stage (see analysis *infra* section III). Those calendars indicate a similar persisting lack of access to outdoor exercise or the prison gym.

Ross has chronic, clinically diagnosed anxiety and depression, which have been exacerbated by the excessive lockdowns and denial of yard time. *Id.* at 7. His physical health has also fluctuated due to the inconsistent exercise schedule; he reported weight gain of nearly forty pounds since the MPO went into effect (from roughly 200 pounds in 2020 to 238 pounds on the date of his evidentiary hearing). ECF No. 35. And finally, Ross also alleges that he has seen a significant increase in hostility and violence among the inmates housed in his prison unit since HDSP began lockdowns as part of the MPO. *Id.*

  *b. Legal standard*

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of hardships tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate: (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in their favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). When a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted).

In civil actions challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out" in § 3626(a)(1)(B). *Id.* A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).

    c. *Discussion*

        i. *Ross has demonstrated a likelihood of success on the merits.*

An inmate seeking to prove an Eighth Amendment violation must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Id.* (cleaned up).

            1. *Ross has demonstrated that he was objectively deprived of something sufficiently serious.*

Deprivation of outdoor exercise constitutes something "sufficiently serious" in the context of the Eighth Amendment. *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (stating that prison officials may violate an inmate's Eighth Amendment rights when they deprive him of "a single identifiable human need such as food, warmth, or exercise"); *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) ("We have consistently held that 'ordinarily the lack of outdoor exercise for extended periods is a sufficiently serious deprivation' for Eighth Amendment purposes." (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)). A prohibition on outdoor exercise of "six weeks is a 'sufficiently serious' deprivation to support an Eighth Amendment claim." *Id.* (citing *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (en banc);

*Allen v. Sakai*, 48 F.3d 1082, 1086 (9th Cir. 1994)). This is because exercise "is one of the most basic human necessities protected by the Eighth Amendment." *Thomas*, 611 F.3d at 1151– 52 (quotation omitted). "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). In deciding whether a deprivation of outdoor exercise constitutes a violation of the Eighth Amendment, courts in the Ninth Circuit consider "(1) the opportunity to be out of the cell, (2) the availability of recreation within the cell, (3) the size of the cell, and (4) the duration of confinement." *Henrickson v. Nevada*, 2021 WL 1603965, at *1 (D. Nev. Mar. 23, 2021) (quoting *Norbert v. S.F. Sheriff's Dep't*, 2020 WL 8675997, at *18 (N.D. Cal. Jan. 31, 2020)).[3]

      The evidence before me suggests that Ross has established a likelihood of success in demonstrating that he has not received a constitutionally adequate amount of exercise time. First, I note that Ross has had minimal opportunity to be out of his cell. He states that, for most of September and October 2022, he had yard activities for only a couple days. ECF No. 35. For the most part, his unit was primarily on lockdown, during which he was confined to his cell with his cellmate. *Id.* He alleges that, prior to filing his injunction motion, he had gone nearly sixty days without yard time. *Id.* I questioned Ross at the evidentiary hearing to confirm that the same operations were in place after he filed his motion for a preliminary injunction. *Id.* Ross confirmed; for example, during the weeks leading up to the evidentiary hearing, HDSP declared a "lockdown" and provided no opportunity for yard or gym time between January 21–26, 2023. *Id.* Prison officials permitted yard time on January 27, but reinstituted lockdown on January 28 through February 1, denying yard or gym time. *Id.* Ross thus had one day of "normal" prison operations out of the twelve days preceding the hearing.

---

[3] Both parties analyze this issue under the two-part objective and subjective test prescribed by *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000), to determine whether an action by a prison official has created an unconstitutional condition of confinement under the Eighth Amendment. *Compare* ECF No. 11 at 15–16 *with* ECF No. 19 at 6–9.

Nonetheless, defendants argue that Ross has adequate exercise opportunities because he receives "tier time." ECF No. 19 at 8. Defendants refer to time spent outside of the cell, but still indoors as tier time. ECF No. 35. Tier time includes time for inmates to utilize the shower, the phone, microwaves, tables, and other indoor prison amenities. *Id.* Despite this contention, I find that whether Ross receives adequate tier time has no bearing on whether he is given sufficient outdoor exercise access and opportunity. Further, Ross argues that tier time is similarly minimized—if not revoked outright—during "lockdowns" and testified that scheduled tier time does not occur as planned, again demonstrating that the prison's schedules do not always reflect the reality of its operations. ECF No. 11 at 8; ECF No. 35.

In sum, the first factor—that Ross was deprived of something sufficiently serious (here, the opportunity to be out of his cell)—weighs in Ross's favor, as staffing shortages at the prison have severely curtailed the aspirational schedules created by HDSP. In addition, Ross has little opportunity to exercise inside his cell. While there was no direct testimony regarding the size of each cell at HDSP, Ross has stated that he lives in a double occupancy cell with another inmate. ECF No. 11 at 7. Ross is serving a life sentence without the possibility of parole. *Id.* at 5. These factors weigh in favor of a finding that the deprivation of outdoor exercise is "sufficiently serious." *Henrickson*, 2021 WL 1603965, at *1. I conclude that Ross has adequately demonstrated that he was objectively deprived of something sufficiently serious.

> 2. *Ross has demonstrated that the deprivation of outdoor exercise occurred with deliberate indifference to his health.*

The second prong of the two-prong test, showing "deliberate indifference," involves a two-part inquiry. *Thomas*, 611 F.3d at 1150. First, the inmate must show that prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. *Farmer*, 511 U.S. at 837. This may be satisfied if the inmate shows that the risk posed by the deprivation is obvious. *See id.* at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Second, the inmate must show that prison officials had

no "reasonable" justification for the deprivation, in spite of that risk of harm. *See id.* at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.").

The risk posed by deprivation of access to outdoor exercise is, indeed, obvious. *See Thomas*, 611 F.3d at 1151 (citing *Farmer*, 511 U.S. at 842) ("Any argument that the risk to [plaintiff] was not 'obvious' fails as a matter of law."). "[W]e measure what is 'obvious' in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved." *Id.* This circuit's "case law uniformly stresses the vital importance of exercise for prisoners." *Id.* at 1152. Prison officials are aware, as a matter of law, of the potential consequences of depriving an inmate of outdoor exercise when they know the length and scope of an inmate's confinement without such exercise. *Id.* Ross has demonstrated that defendants were aware of the nature of the deprivation. I thus proceed to the second step to determine whether Ross has demonstrated that defendants had no reasonable justification for that deprivation.

Occasional deprivations of exercise time do not violate the Constitution, especially when such deprivations are made in response to emergency conditions or the interests of security or safety. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). But here, "it appears that the emergency has become the normal" (*Henrickson*, 2021 WL 1603965, at *2), and Ross has repeatedly been denied any exercise time at all. The defendants have not provided a reasonable justification for months' worth of lockdowns. "Logistical problems, without more, cannot justify serious civil rights violations such as the deprivation of a basic human need." *Shorter v. Baca*, 895 F.3d 1176, 1186 (9th Cir. 2018) (quotation omitted). Yet logistical obstacles are the sole reasons cited by defendants to justify their curtailment of Ross's outdoor exercise time after September 30, 2022. Specifically, when asked for the reason behind the modified lockdown, associate warden Williams stated that the prison experienced severe staffing shortages and could not safely run

the yard as a result. ECF No. 35. She testified that most of the lockdowns at HDSP resulted from staffing shortages. *Id.*

Ultimately, I asked Williams directly whether she could confirm that inmates at HDSP have received at least two hours of exercise each week during 2022. *Id.* She stated that she did not know. *Id.* When pressed further, she was not prepared to discuss any specific time period. *Id.* She added that in her "honest" opinion, the staff at HDSP was overworked, did not want to work weekends, and excessively called out of work. *Id.* Considering the totality of Ross's circumstances, I find that he has adequately demonstrated that prison officials had no reasonable justification for depriving him of outdoor exercise. In sum, Ross has demonstrated a likelihood of success on the merits as to whether he has suffered an unconstitutional abrogation of his Eighth Amendment rights.

    ii. *Ross has demonstrated a likelihood of irreparable harm.*

Defendants argue that Ross has not filed any grievances with the prison about his mental or physical health, and thus "the medical evidence shows that he has not been suffering from the mental health issues he alleges." ECF No. 19 at 9. However, constitutional violations are inherently irreparably harmful. *See Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd and remanded on other grounds*, 562 U.S. 134 (2011) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."). Given Ross's likelihood of success on the merits, he satisfies the irreparable-harm factor.

    iii. *The balance of hardships favors Ross.*

Defendants argue that the Nevada Department of Corrections' (NDOC) interest in managing the safety and security of its correctional institutions outweighs any interest Ross may have in daily exercise. While safety and security are certainly valid concerns for prison officials, there is no evidence before me suggesting that the majority—or even substantial

minority—of lockdown days were justified by safety or security.[4] To the contrary, defendant Williams testified at the evidentiary hearing that the recent slew of lockdowns were caused by staffing shortages. ECF No. 35. To the extent that future lockdowns occur based on safety concerns, I have fashioned language in the injunction to permit the temporary abrogation of outdoor exercise for safety reasons. But denying HDSP prisoners their constitutional rights cannot be the norm, and hardships relating to staffing issues do not outweigh Ross's interest in receiving adequate exercise time.

                iv.     *An injunction is in the public interest.*

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted). Finding that all four of the *Winter* factors weigh in favor of injunctive relief in this case, I grant Ross's motion for a preliminary injunction (ECF No. 11). But I am mindful that in civil actions challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). I thus issue the injunction to mandate seven hours of outdoor exercise per week in conformity with the new yard schedule that defendant Williams referenced at the hearing. ECF No. 35. In essence, I am merely requiring the defendants to comply with the schedule that they themselves created. I also permit a carveout for some days/weeks based on temporary emergencies, at the discretion of HDSP officials.

---

[4] I do not take lightly the risks faced by prison officials in maintaining a secure facility. For example, Williams testified that on August 31, 2022, the yard was locked down because of an attack on a staff member. ECF No. 35. It was locked down again so the prison could conduct mental health assessments on September 9, 2022, following two inmate deaths by suicide. *Id.* Ross's allegations in this case, however, describe a potentially overbroad lockdown policy that impinges his constitutional rights. "Although prison administrators generally have broad discretion in determining whether to declare emergencies and impose 'lockdowns' to control institutional disturbances, the conditions imposed during the lockdown may constitute cruel and unusual punishment under the Eighth Amendment." *Norwood v. Woodford*, 611 F. Supp. 2d 1148, 1154 (S.D. Cal. 2009); *see also Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980) (stating that a denial of outdoor exercise may give rise to an Eighth Amendment violation even in response to emergency conditions).

Finally, I order the parties to submit a status report in 60 days so that I can determine the efficacy of this injunction.

## II. Motion to compel witness attendance [ECF No. 32]

Prior to the evidentiary hearing, Ross moved to compel various witnesses from the NDOC to attend the hearing, and he sought to procure video recordings of the HDSP yard between August 30, 2022, and the present date. ECF No. 32 at 2. I did not rule on this motion prior to the evidentiary hearing because I wanted to determine if the motion could otherwise be resolved without resorting to such extraordinary measures. As evidenced by my ruling, I find that Ross has already met his burden for injunctive relief, and such additional evidence was unnecessary at this stage. I thus deny his motion to compel witness attendance as moot.

## III. Motion to admit evidence [ECF No. 37]

Ross seeks to admit as evidence six pages of his handwritten yard logs. ECF No. 37. Per his signed and sworn declaration, the logs count the number of days during which Unit #9 was permitted to go outdoors or to the prison gym. *See* ECF No. 37 at 5–20. The logs differ from the ones that Ross filed contemporaneously with his injunction motion (ECF No. 12 at 19–28), as the previously filed logs cover January through October 2022, while the logs at issue cover October 2022 through February 2023. I determined at the evidentiary hearing that while Ross could testify as to the information contained within the records based on his own knowledge and experiences, the records themselves were inadmissible hearsay. ECF No. 35. Defendants urge me to deny Ross's motion for the same reasons that I denied his attempt to introduce the logs at hearing. ECF No. 40.

The local rules of this district prohibit attempts to supplement previous briefing without the court's leave. *See* LR 7-2(g) (stating that a party may not file supplemental pleadings . . . or evidence without leave of court granted for good cause). Ross's motion to introduce the logs effectively functions as supplemental briefing to his injunction motion, but Ross has not first obtained the court's leave, nor has he explained why good cause exists to permit such briefing.

10

Ross did not adhere to proper procedure in attempting to introduce his handwritten logs, nor did he articulate a valid basis for introducing otherwise inadmissible hearsay evidence. For those reasons, I must deny his motion.[5]

IV.  **Motion to obtain hearing transcript [ECF No. 38]**

Ross moves to obtain a copy of the transcript for the February 2, 2023, evidentiary hearing. ECF No. 38. The court previously granted Ross's *in forma pauperis* application and noted that Ross is both incarcerated and a pro se litigant. ECF No. 13. Defendants filed what is essentially a non-opposition to the motion, stating that they would defer to my ruling on the matter. ECF No. 41. Federal law provides that "[f]ees for transcripts furnished in other proceedings [than habeas actions] to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge . . . certifies that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f). "A request for a transcript at government's expense should not be granted unless 'the appeal [or suit] presents a substantial issue.'" *Tapa Fierro v. Wilmot*, 2021 WL 3411086, at *1 (D. Ariz. July 19, 2021) (quoting *Henderson v. United States*, 734 F.2d 483, 484 (9th Cir. 1984) (alteration in original)). A "substantial" issue is one defined as "reasonably debatable." *Maloney v. E.I. Du Pont de Nemours & Co.*, 396 F.2d 939, 940 (D.C. Cir. 1967).

Ross argues that the transcript will aid him in discovery, for preparation of his motion for summary judgment, and in preparing an amended complaint. ECF No. 38 at 2. I find that Ross may reasonably rely upon the hearing transcript at future stages of this litigation, as some of the testimony elicited at the evidentiary hearing may not be available to Ross via any other means. I anticipate that summary judgment will indeed be a "substantial" issue in this case, and that the evidentiary hearing transcript will likely aid Ross in preparing his motion for summary

---

[5] Nonetheless, as Ross points out, I may still consider his logs and declaration in determining the propriety of injunctive relief. "In its determination on a motion for a preliminary injunction, 'a court may properly consider evidence that would otherwise be inadmissible at trial.'" *Francis v. Shinn*, 2023 WL 355904, at *2 (D. Ariz. Jan. 23, 2023) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009) (district court did not abuse its discretion by considering "unverified client complaints" or plaintiff's counsel's interested declaration when it granted a preliminary injunction)). A court may also consider evidence or developments that post-date the pleadings. *Farmer*, 511 U.S. at 846.

judgment in addition to helping him focus his discovery requests. I thus grant Ross's motion and order a copy of the evidentiary hearing transcript to be provided to him at the government's expense.

V.     Conclusion

IT IS THEREFORE ORDERED that plaintiff Jesse Aron Ross's motion for a preliminary injunction [ECF No. 11] is GRANTED. I order defendants to provide Ross with at least seven hours of access to outdoor exercise per week, subject to temporary limitations when a genuine emergency arises. The parties must file a status report in 60 days, accounting for Ross's yard time following the issuance of this injunction. No bond is required under Federal Rule of Civil Procedure 65, due to Ross's indigency.

IT IS FURTHER ORDERED that Ross's motion to compel witness attendance [ECF No. 32] is DENIED as moot.

IT IS FURTHER ORDERED that Ross's motion to admit evidence [ECF No. 37] is DENIED.

IT IS FURTHER ORDERED that Ross's motion for a hearing transcript [ECF No. 38] is GRANTED. The Clerk of Court is directed to prepare a copy of the hearing transcript at the government's expense and to mail a copy of the official hearing transcript to Ross.

DATED: March 3, 2023

_____
Cristina D. Silva
United States District Judge